STATE OF IOWA ex rel. VERNON R. SEEBURGER, Appellee, v. PAT RILEY et al., Appellants.

INTOXICATING LIQUORS:  Nuisance—Necessary Abatement and Closing of Premises.  On proof of the existence of the nuisance and upon the entry of a decree of injunction, abatement and closing of the premises must necessarily follow. .

INTOXICATING LIQUORS:  Nuisance—Non-good-faith Abatement— Effect.  A non-good-faith abatement of a nuisance prior to the trial of injunction proceedings will not shield the guilty party from an injunction and the consequences thereof.

INTOXICATING LIQUORS:  Nuisance—Justifiable Assessment of Mulct Tax.  Proof of the existence of a nuisance on the premises, plus evidence that such was the general reputation of the place, plus evidence of the renting to known bootleggers, and a suggestive reluctance on the part of the owner to make inquiries as to the business of his tenants, furnish ample justification for the imposition of a mulct tax.

DE GRAFF, J., dissents, on instant record.

Headnote 1:  33 C. J. p. 699.  Headnote 2:  33 C. J. p. 695.  Headnote 3:  33 C. J. p. 700 (Anno.)

*Appeal from Polk District Court.*—JOHN FLETCHER, Judge.

JANUARY 11, 1927.

Action to enjoin the maintenance of a liquor nuisance, to abate the same, and to assess a mulct tax. Decree was granted as prayed, and the owner of the premises appeals.—*Affirmed.*

*Dunshee & Brody,* for appellant Morris Beechen.

*Vernon R. Seeburger,* for appellee.

FAVILLE, J.—I. Appellant Beechen is the owner of the building in controversy, which is located at 209 West Fourth Street, in the city of Des Moines. The particular premises in-

1. INTOXICATING LIQUORS: nuisance: necessary abatement and closing of premises.

volved in this litigation are the upstairs portion of the building, which is an apartment used for living rooms. The lower portion of the building is occupied by a beauty parlor and a tailor shop. There are two main questions urged upon this appeal by the owner of the premises for our consideration: (1) Did the court err in decreeing that injunction issue against the premises, closing the same for a period of one year unless sooner released as provided by law; and (2), did the court err in entering judgment against the owner for the statutory mulct tax?

On the first proposition, that the court erred in decreeing that the place should be closed for a period of one year as a nuisance, unless sooner released, as provided by law, we think the evidence is amply sufficient to justify the decree of the trial court in this regard. Where the court finds against the owner that a nuisance in fact exists, and that the same should be enjoined, the statute is mandatory as to an order for abatement of the nuisance and the closing of the place for one year unless sooner released according to law. Section 2032, Code of 1924; *State ex rel. Seeburger v. Deeney,* 202 Iowa 742, and cases cited therein.

Appellant contends that he abated the nuisance before trial, and hence that his property was not subject to injunction. In some instances, we have recognized the rule that, where the

2. INTOXICATING    party charged with maintaining a nuisance has
LIQUORS: nui-
sance: non-      in good faith abandoned the same prior to the
good-faith abate-
ment: effect.    commencement of an action of injunction, the
court may deny a decree of injunction. *Davidson v. Benevolent
& P. O. E.*, 174 Iowa 1; *Sawyer v. Termohlen*, 144 Iowa 247.

But these cases do not reach the case at bar. We hold with
the trial court that, under the evidence in the case, an injunc-
tion was properly issued, not only against the unlawful seller
(tenant), but also against the property. Such being the case,
the provisions of the decree regarding abatement and condition-
al closing of the building follow as a matter of course, under the
statute. The owner can release the property in the manner pro-
vided by Section 2036, Code of 1924.

II. Appellant complains of the portion of the decree allow-
ing a mulct tax against the appellant and the said premises.
The statute, Code Section 2051, is as follows:

"When a permanent injunction shall issue against any
person for maintaining a nuisance as herein defined or against
any owner or agent of the building kept or used for the purposes
prohibited by this title, a tax shall be imposed upon said build-
ing and upon the ground upon which the same is located, and
against the persons maintaining said nuisance and against the
owner or agent of said premises, when they knew, or ought in
reason to have known, of said nuisance."

Section 2053 is as follows:

"On the issue whether a party knew or ought to have
known of such nuisance, evidence of the general reputation of
the place shall be admissible."

. At this point, the question is whether or not there was suffi-
cient evidence to sustain the decree of the trial court imposing
a mulct tax on the ground that the owner knew, or ought in
3. INTOXICATING    reason to have known, of said nuisance. The
LIQUORS: nui-
sance: justifiable  statute expressly makes evidence of the general
assessment of
mulct tax.       reputation of the place admissible upon this
question. The appellant at one time occupied the north half
of the first story of said building as a tailor shop, and, about
five years prior to the trial, he gave up the occupation of said
premises and leased the same. About May, 1923, he engaged in
the tailor business at 320 Ninth Street, and continued in that
business until about the 15th of March, 1925. He looked after

the renting of the premises himself. In May, 1924, he rented the premises to one Gustafson, who remained in possession about fifteen days, during which time there was a liquor prosecution against him for keeping and selling intoxicating liquor on the premises. Appellant testifies that, sometime in September, 1924, he leased the premises to a party by the name of Dickson. The place was again raided, about Christmas time, and was at said time being maintained as a liquor nuisance. Appellant testified that, at the time he leased it to Dickson, he did not make any inquiry about his character; that Dickson told him he was a steam fitter. The appellant testified that he learned afterward that Dickson was a professional bootlegger. Dickson left the premises about the 28th of December, 1924, and on January 2, 1925, appellant leased the premises to one McGrean. In regard to this party, appellant testified that McGrean told him that he was working at the Fort Des Moines Hotel. He says:

"I took him for what he told me. He said he was a bell hop down there, was married, making good money, and wanted a place down town. I didn't get any further information about him. I didn't call the hotel. I didn't think he would lie, the way he looked."

He did not go down to the place to collect the rent, but it was brought to his shop by the tenant. It seems that the appellant was starting a new business in Sioux City, and left Des Moines on March 27th or 28th, and returned on April 4th. That night, McGrean and two other men were arrested in the premises in controversy, on the charge of selling intoxicating liquor. Appellant learned of said raid. He left for Sioux City that night, but instructed his wife to proceed Monday to get rid of the tenant. The wife attempted to telephone the place on Monday, but without success. Later, she communicated with the tenant, who objected to going out. He finally left the premises, May 1st. The appellee offered the testimony of a number of witnesses who testified that the place was one that bore the reputation of being a place where intoxicating liquors were sold unlawfully. The appellant offered no evidence whatever with regard to the reputation of the premises. The evidence clearly establishes that the appellant had for a considerable period of time been leasing the property in controversy to people who were engaged in the unlawful sale of liquor, and who were maintaining a

nuisance upon the premises. Prior to leasing the premises to the tenant McGrean, the appellant knew that the two preceding tenants had been accused of the unlawful sale of liquor upon said premises. It is evident from the record that the reputation of the place as one where liquors were sold unlawfully existed during the occupancy of the same by the last tenant, McGrean. The past experience of the appellant with the two immediately preceding tenants would have caused an ordinarily cautious and prudent man to exercise some degree of care in selecting the tenant who would go into the premises. The evidence shows that the appellant made no such investigation. He did not even call up the hotel where this tenant claimed to be employed. He testifies that he did not get any information about him except what the tenant told him, "that he was working as a bell hop at the Fort Des Moines Hotel." It was nearly a month from the time of the raid and the information to the appellant that the tenant was maintaining a nuisance upon the premises, before the tenant left the premises. No action of ejectment or for cancellation of the lease was attempted.

Upon the whole record, we are convinced that the appellant is properly chargeable with knowing, or that he ought in reason to have known, that said premises were being used for an unlawful purpose. See *State ex rel. Seeburger v. James*, 202 Iowa 1137. We are not disposed to disturb the decree of the trial court upon the record disclosed in this case, and it must be, and is, in all respects, ordered affirmed.—*Affirmed*.

Evans, C. J., and Stevens and Vermilion, JJ., concur.

De Graff, J., dissents.